Joseph Shapiro (admitted *pro hac vice*)
STRONG & HANNI
102 South 200 East, Suite 800
Salt Lake City, UT 84111
jshapiro@strongandhanni.com
801-323-2131

Aaron Gould
CONNELL FOLEY LLP
Harborside 5
185 Hudson Street, Ste 2510
Jersey City, NJ 07311
agould@connellfoley.com
201.521.1000

*Attorneys for Defendants*

# UNITED STATES DISTRICT COURT FOR THE
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| STEEPLECHASE ARTS & PRODUCTIONS, L.L.C., *Plaintiff*, v. WISDOM PATHS, INC. dba SPIRALVERSE and TODD SPOTZ, *DefendantS* | **Case No.: 2:22-cv-02031-KM-MAH** |

## DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

Defendants Wisdom Paths, Inc. ("Wisdom Paths") and Todd Spotz ("Spotz") (collectively, "Defendants" or "Spiralverse") hereby oppose Plaintiff's Motion for Summary Judgment (Dkt. 27-1). As discussed in the August 24, 2022 call with the Court, and as reflected in the Court's August 24, 2022 Text Order (Dkt. 29), Defendant's Motion to Dismiss (Dkt. 22) and Plaintiff's Opposition and

1

Motion for Summary Judgment (Dkt. 24) will be treated as pre-discovery cross motions for summary judgment based on the Parties' Stipulated Facts (Dkt. 22-3).

As a preliminary matter, Defendants object to Plaintiff's citations to and reliance on its Amended Complaint because a under Rule 56(c)(2) a complaint is not admissible in evidence, and additionally because discovery has not yet occurred and these cross motions are therefore limited to the Stipulated Facts.

As described in the Stipulated Facts (Dkt. 22-3), Defendant Spiralverse purchases music instruction books from Steeplechase's authorized distributor, removes the original glue binding and replaces it with a spiral binding, places a sticker on the front cover the books to notify the consumer that the spiral binding was installed by Spiralverse (and not by Steeplechase), and then resells the spiral-bound books on Amazon. Steeplechase alleges that Spiralverse is liable for both (i) infringement of Steeplechase's exclusive right to make derivative works and (ii) unfair competition for confusing consumers as to the source and characteristics of the spiral-bound books.

The Court should deny Steeplechase's motion for summary judgement for derivative-work infringement because removing a glue binding and replacing it with a spiral binding is purely utilitarian and reflects none of the creativity required for authorship of copyrightable content in a derivative work. The Court should deny Steeplechase's motion for summary judgment for false advertising and trademark infringement because the sticker label on the books sold by Defendants prevents any possible consumer confusion as to whether Steeplechase is responsible for the spiral binding that Defendants installed, and Defendants' Amazon listing is not misleading. Additionally, genuine issues of material fact preclude summary judgment on the false advertising and trademark infringement claims.

## I.  ARGUMENT

### A. *A derivative work must comprise a change reflecting copyright-protectable creativity or authorship.*

Steeplechase hangs its hat on the assertion that any change to a copyright-protected work is a derivative work—even if the change does not itself reflect sufficient creativity and/or amount to a copyright-protectable work of authorship. This is indeed a radical proposition. Let those within the reach of United States copyright law beware! Under this new regime, every two-component item infringes Steeplechase's [apparently quite powerful] copyrights in music books. Stoic rocks are safe. Nothing else is . . . .

Without citing any authority, Steeplechase explains that the Copyright Act's use of "work" in some places and "work of authorship" in other places clearly and unambiguously indicates a distinction between works involving creativity and authorship ("works of authorship") and something that is merely a change, even if not reflecting creativity ("work"). Steeplechase further explains that under this regime, the definition of "derivative work" in implicates any change—even a non-creative change:

> A "derivative work" is a work based upon one or more preexisting works, such as a translation, musical arrangement, dramatization, fictionalization, motion picture version, sound recording, art reproduction, abridgment, condensation, or any other form in which a work may be recast, transformed, or adapted. A work consisting of editorial revisions, annotations, elaborations, or other modifications which, as a whole, represent an original work of authorship, is a "derivative work".

17 U.S.C. § 101.

What Steeplechase apparently ignores is that "work" gets used twice in the leading general definition of "derivative work": "a *work* based upon one or more preexisting *works* . . . ." 17 U.S.C. § 101 (emphasis added). Under Steeplechase's proposed regime, this sentence means that a "derivative work" is a change to anything. The "thing" does not have to be copyright protectable. The "change" does not have to be copyright protectable. A non-

3

copyrightable element added to a non-copyrightable element infringes Steeplechase's copyrights for music books. The absurdity should be becoming apparent . . . .

More likely, and sensical, is that the Copyight Act does not separately define "work" because it uses "work" as a shorthand for "work of authorship." The last sentence in the definition of "derivative work" reinforces that copyright-protectable creativity is required for a derivative work: "A *work* consisting of editorial revisions, annotations, elaborations, or other modifications which, as a whole, *represent an original work of authorship*, is a 'derivative work'." 17 U.S.C. § 101 (emphasis added).

Not surprisingly, Steeplechase has no authority—from any U.S. court anywhere—to support its exciting, expansive, and revolutionary interpretation of the Copyright Act.

Neither *Mirage*, *Greenwich*, nor *Munoz* improves Steeplechase's position. In *Mirage* the 9th Circuit found that a defendant infringed the derivative-work right by removing a copyright-protected image from a book and artistically mounting the removed image on a tile for a new and alternative aesthetically pleasing display; the defendant had "made another version of [the artist's] art works." *Mirage Editions, Inc. v. Albuquerque A.R.T. Co.*, 856 F.2d 1341, 1343 (9th Cir. 1988). In *Greenwich*, the Central District of California relied on *Mirage* to find that a defendant infringed the derivative-work copyright by cutting a copyright-protected watercolor image out of a book, mounting it on canvas or matting, and framing it. *Greenwich Workshop, Inc. v. Timber Creations, Inc.*, 932 F. Supp. 1210, 1214–15 (C.D. Cal. 1996). In *Munoz*, the 9th Circuit affirmed the District of Alaska's finding that a defendant infringed the derivative-work copyright by mounting notecards showing a copyright-protected watercolor painting to a ceramic tile and covering with a clear protective layer. *Munoz v. Albuquerque A.R.T. Co.*, 829 F. Supp. 309, 314 (D. Alaska 1993), *aff'd*, 38 F.3d 1218 (9th Cir. 1994).

What *Mirage*, *Greenwich*, and *Munoz* have in common—and what is missing from Defendants' spiral binding—is an injection of creativity to improve and/or alter the aesthetics of the underlying work of authorship. Defendants inject no creativity and do not improve or alter the copyrightable features of the Steeplechase music books. If Defendants are liable for copyright infringement, then an ominous bell has sounded for the makers of protective book covers and bookmarks—who are now liable for contributory copyright infringement.

And Steeplechase's out-of-context quote from *Sony* also fails to advance its cause. Steeplechase suggests that copyright law broadly implicates any use with a commercial angle: "'Every commercial use of copyrighted material is presumptively an unfair exploitation of the monopoly privilege that belongs to the owner of the copyright.'" Dkt. 27-1 at 19 (quoting *Sony Corp. of Am. v. Universal City Studios, Inc.*, 464 U.S. 417, 451 (1984)). The Supreme Court carefully qualified this statement with "presumptively"—thereby preserving protected first-sale-doctrine uses such as Defendants' sales. 17 U.S.C. § 109(a) (protecting right of lawful owner of copy of copyrighted material to sell such copy).

### B. *The Court cannot find willfulness on summary judgment.*

As established herein and in Defendants' other summary judgment briefing, Defendants have a reasonable and good faith believe that their rebinding business is not copyright infringement. This is not reckless disregard. Additionally, a reasonable factfinder could find reasons for seeking permission other than an admission of liability. Small enterprises like Defendants much prefer to obtain permission even if unnecessary because it is difficult and expensive to fend off legal attacks, regardless of whether such legal attacks are warranted or likely to succeed.

### C. *Genuine issues of fact preclude summary judgment for false advertising, unfair competition and trademark infringement.*

The Court cannot find on summary judgment that consumers were likely confused by Defendants' sales of spiral-bound books under Amazon's "new" classification. Summary judgment requires absence of genuine issues of material fact, and that a reasonable factfinder could not find otherwise.

Here, a reasonable factfinder could find that a consumer would be confused by purchasing a book that was brand new except for the installation of a spiral binding. The Amazon Condition Guidelines for Books recite:

> **Condition guidelines: Books**
>
> In addition to the general condition guidelines, apply the following guidelines to new and used books:
>
> - **New:** A brand-new copy with cover and original protective wrapping intact. Books with markings on the cover or pages, books marked as "Bargain" or "Remainder," or with any other labels attached, do not qualify as new condition.
> - **Used - Like New:** Item may have minor cosmetic defects (such as marks, wears, cuts, bends, or crushes) on the cover, spine, pages, or dust cover. Dust cover is intact and pages are clean and not marred by notes. Item may contain remainder marks on outside edges. Item may be missing bundled media.

Declaration of Joseph Shapiro at ¶ 3.

The Amazon guidelines do not contemplate installation of a spiral binding. Steeplechase has not alleged removal of any "original protective wrapping." "Used" would actually be misleading because the book has not been used for its intended purpose, which is the general colloquial understanding of "used." In fact, a more colloquial way of describing installation of a spiral binding would be "modified"—but this is not an option on Amazon and, again, the books have clearly not been "used" (e.g., for playing or learning music) as would be commonly understood by a consumer. Instead they have been modified with no artifacts of "use," e.g., wear. It is not clear, especially on summary judgment, that a consumer would conclude that installing a spiral binding makes a book "used." Additionally, Steeplechase has not even alleged that a significant number of Amazon

consumers consult the Condition Guidelines, or are familiar with or apply the Condition Guidelines, in shopping for books. The Condition Guidelines are targeted toward sellers—not buyers.

Additionally, although Steeplechase attempts to make a big deal out of "glue residue" and "obscured print," Steeplechase has produced no images to show the alleged significance of the "glue residue," and the provided images for "obscured print" show that it is de minimis and possibly not even noticeable: some of the spiral-binding holes impede on parts of the double vertical bar and the right end of the musical staffs. This is not enough on summary judgment to show that every reasonable factfinding would conclude that consumers would likely conclude that the books as sold by Defendants are "used."

Additionally, the cited consumer reviews are inappropriate on summary judgment limited to Stipulated Facts. Defendants have had no opportunity to conduct discovery on the veracity of the cited consumer reviews, the volume and content of other consumer reviews, and whether Steeplechase has identified consumer reviews that are unfavorable to Steeplechase.

Finally, Steeplechase's fixation on the Amazon listing condition as "new" or "used" fails to account for the sticker that Defendants placed on the books. Regardless of how a buyer interpreted the "new" Amazon listing condition, the sticker made it clear to the buyer that Defendants—not Steeplechase—had performed an after-market alteration by installing a spiral binding.

### D. *The material difference doctrine means that the first-sale doctrine applies as long as the seller apprises buyers of the material alteration.*

In its section titled "The Material Difference Doctrine Bars Reliance on the First Sale Doctrine" (Dkt. 27-1 at pp. 10-12), Steeplechase suggests that the first-sale doctrine never protects sale of a materially altered product. This simply is not the case. As explained in Defendants' opening brief (Dkt. 22-1), The material difference doctrine means that for the first-sale doctrine to protect a sale of a materially altered product, the seller must sufficiently apprise the buyer of the alteration.

### E. *Trademark infringement*

Genuine issues of material fact preclude a finding of trademark infringement on summary judgment. Steeplechase simply has not adduced evidence sufficient to establish that a reasonable factfinder would be compelled to find a likelihood of consumer confusion. Instead, Steeplechase's only evidence is an allegation that the trademark "Steeplechase" appears in Defendants' Amazon listing. Although Steeplechase repeatedly attempts to characterize use of "Steeplechase" as prominent—it is not. In fact, the Amazon listing screenshot upon which Steeplechase relies (Dkt. 24-8), does not show the word "Steeplechase" and does not identify the seller. It is unclear how this is even relevant and, if relevant, how it could leave a reasonable factfinder with no choice but to find likelihood of consumer confusion. Additionally, Steeplechase has not even attempted to explain how confusion could result when the Amazon listing clearly shows that Defendants—and not Steeplechase—are the seller.

As a side note, "Mr. Ferrante's name and likeness" is irrelevant here because Steeplechase has not alleged liability for personality rights and/or trademark rights in "Ferrante."

## II.   CONCLUSION

Steeplechase's repeated suggestion that Defendant's rebinding process involves "ripping out pages" reflects the strain in Steeplechase's arguments. Eyebrows will be raised when Steeplechase explains that the first step in replacing tires on a car is "ripping the car off the tires." Defendants install a purely utilitarian spiral binding on books and then sell the books on Amazon from Defendants' seller account with a notice that Defendants are responsible for the spiral binding. Installing a spiral binding injects none of the creativity that would result in a derivative work. And reselling a book that has been spiral bound is not trademark infringement (or false advertising) when

the seller clearly apprises the buyer that the seller, and not the original publisher, installed the spiral binding.

DATED: September 6, 2022

                                        */s/ Aaron Gould*

                                        STRONG & HANNI
                                        Joseph Shapiro

                                        CONNELL FOLEY LLP
                                        Aaron Gould

                                        *Attorneys for Defendants*

## CERTIFICATE OF SERVICE

I hereby declare that on September 6, 2022 I served a true and correct copy of the foregoing document on all counsel of record via the Court's CM/ECF electronic filing and service system.

                                        */s/ Aaron Gould*