**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **STEEPLECHASE ARTS & PRODUCTIONS, L.L.C.,** | Civ. No. 22-02031 (KM)(MAH) |
| **Plaintiff,** | **OPINION** |
| **v.** | |
| **WISDOM PATHS, INC. a/k/a THE WORDS OF WISDOM, INC. d/b/a SPIRALVERSE and TODD SPOTZ,** | |
| **Defendants.** | |

<u>**KEVIN MCNULTY, U.S.D.J.:**</u>

This matter comes before the Court on pre-discovery cross-motions for summary judgment by plaintiff Steeplechase Arts & Productions, L.L.C. ("Steeplechase") and defendants Wisdom Paths, Inc. a/k/a The Words of Wisdom, Inc. d/b/a Spiralverse and Todd Spotz (collectively, "Spiralverse"). The complaint alleges that Spiralverse is liable for copyright infringement and unfair competition under the Lanham Act. (DE 9.)[1] After Spiralverse moved to

---

[1]   Certain key citations to the record will be abbreviated as follows:

DE = Docket entry in this case

Compl. = Amended complaint (DE 9)

Stip. Facts = Stipulated facts (DE 22-3)

Sp. Mot. = Brief in support of Spiralverse's motion for summary judgment (DE 22-1)

St. Mot. = Brief in support of Steeplechase's motion for summary judgment (DE 27-1)

Sp. Opp. = Spiralverse's brief in opposition to Steeplechase's motion (DE 30)

St. Resp. = Steeplechase's reply brief in further support of its motion (DE 34)

dismiss both counts of the complaint, Steeplechase cross-moved for summary judgment. (DE 22, 24.) The parties subsequently agreed that Spiralverse's motion to dismiss would be converted into a summary judgment motion. For the reasons set forth below, Spiralverse's motion for summary judgment (DE 22) is **GRANTED IN PART** and **DENIED IN PART**, and Steeplechase's motion for summary judgment (DE 24) is **DENIED**. Both parties may renew their summary judgment motions following discovery.

## I.     Background

The stipulated facts are as follows. Steeplechase is the owner of a valid and subsisting registered copyright for the book, "Piano Book for Adult Beginners: Teach Yourself How to Play Famous Piano Songs, Read Music, Theory & Technique" ("Piano Book"). (Stip. Facts ¶1.) Steeplechase also has registered trademark rights and goodwill in the mark STEEPLECHASE ARTS & PRODUCTIONS ("Steeplechase Mark") for, among other things, music instruction books, including for the Piano Book. (*Id.* ¶2.)

Defendant Wisdom Paths, Inc. a/k/a The Words of Wisdom, Inc., d/b/a Spiralverse is a seller of various items on the Amazon marketplace. (*Id.* ¶3.) Defendant Todd Spotz, who also goes by the name of Caleb Spotz, is the sole owner of Wisdom Paths, Inc. (*Id.*)

In 2021 and 2022, Spiralverse purchased hundreds of copies of the Piano Book from authorized distributors for approximately $16.00 to $20.00 per copy.[2] (*Id.* ¶¶4-5.) At some point, Spiralverse contacted Steeplechase to request "rebinding rights" in the Piano Book, but Steeplechase denied the request. (*Id.* ¶8.)

As purchased, the Piano Book is a paperback book with a glue binding. (*Id.* ¶7.) Each copy bears the Steeplechase Mark. (*Id.* ¶6.) Spiralverse removed the original paperback glue bindings from the copies it purchased, punched

---

Amazon Guid. = Amazon condition guidelines for books (DE 24-3)

[2]      For purposes of the pending motions only, the parties stipulated that Spiralverse's purchases of the Piano Books were from authorized distributors. (*Id.* ¶5.)

holes in the pages, and installed spiral bindings. (*Id.* ¶¶9-10.) Spiralverse also affixed to the front covers of at least some of the spiralbound books a label, which states: "The original binding was removed and replaced with a spiral binding by Spiralverse.com." (*Id.* ¶11.) Spiralverse listed its modified copies for sale on Amazon at prices of $29.99 and up, and a large number of those books were sold to consumers. (*Id.* ¶¶12-13.) The Amazon listing indicated that (i) the condition of the books was "new," (ii) the format was "spiralbound," and (iii) the seller was either "Wisdom Paths," "Wisdoms Paths," or "Your Name Books." (*Id.* ¶14.)

As a result of the rebinding, there is glue residue between the cover and the first page of the modified copies sold by Spiralverse. (*Id.* ¶10.) In addition, the spiral binding obscures some of the printed matter, but the parties dispute how significant the obstruction is. (*Id.*) Spiralverse states that the useful readability of the sheet music is not hampered at all. (*Id.*)

## II.    Procedural history

Steeplechase commenced this lawsuit in April 2022. (DE 1.) The complaint raises a claim of copyright infringement under 17 U.S.C. §§ 106(2), 501, as well as an unfair competition claim under the Lanham Act, *see* 15 U.S.C. § 1125(a)(1). In July 2022, Spiralverse moved to dismiss the complaint, and Steeplechase cross-moved for summary judgment. (DE 22, 24.) The Court stayed discovery pending adjudication of the cross-motions. (DE 29.)

At a conference before the Court on January 12, 2023, the parties agreed, with the concurrence of the Court, that Spiralverse's motion to dismiss would be treated as one for summary judgment in light of the stipulated facts that Spiralverse had attached to its brief. (Sp. Mot.; DE 35.)

## III.   Legal standards

Summary judgment is granted if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *See Kreschollek v. S. Stevedoring Co.*, 223 F.3d 202, 204 (3d Cir. 2000) (quoting Fed. R. Civ. P. 56(a)). "In deciding a motion for summary judgment, a court

3

must construe all facts and inferences in the light most favorable to the nonmoving party." *Boyle v. County of Allegheny*, 139 F.3d 386, 393 (3d Cir. 1998).

The moving party bears the burden of establishing that no genuine issue of material fact remains. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). "A fact is material if—taken as true—it would affect the outcome of the case under governing law. And a factual dispute is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *M.S. by and through Hall v. Susquehanna Twp. Sch. Dist.*, 969 F.3d 120, 125 (3d Cir. 2020) (quotation marks and citation omitted).

When the parties file cross-motions for summary judgment, the governing standard "does not change." *Clevenger v. First Option Health Plan of N.J.*, 208 F. Supp. 2d 463, 468-69 (D.N.J. 2002) (citing *Weissman v. U.S.P.S.*, 19 F. Supp. 2d 254 (D.N.J. 1998)). The court must consider the motions independently, in accordance with the principles outlined above. *Goldwell of N.J., Inc. v. KPSS, Inc.*, 622 F. Supp. 2d 168, 184 (D.N.J. 2009); *Williams v. Philadelphia Housing Auth.*, 834 F. Supp. 794, 797 (E.D. Pa. 1993), *aff'd*, 27 F.3d 560 (3d Cir. 1994). That one of the cross-motions is denied does not imply that the other must be granted.

## IV.    Discussion

### A. Copyright infringement

The Copyright Act of 1976, 17 U.S.C. § 101, *et seq.*, protects "original works of authorship fixed in any tangible medium of expression." 17 U.S.C. § 102. A work is "original" and thus qualifies for copyright protection if it "was independently created by the author (as opposed to copied from other works)," and "it possesses at least some minimal degree of creativity." *Dam Things from Denmark, a/k/a Troll Co. ApS, v. Russ Berrie & Co., Inc.*, 290 F.3d 548, 563 (3d Cir. 2002) (quoting *Feist Publications, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 345 (1991)).

Pursuant to the Copyright Act, the owner of a valid copyright has the

exclusive rights to use, and to authorize the use of, his or her work in five ways: (1) to reproduce the work; (2) to prepare "derivative" works based upon the work; (3) to distribute copies of the work; (4) to publicly perform the work; and (5) to display the work publicly. 17 U.S.C. § 106. Copyright infringement occurs when someone who has access to a copyrighted work infringes any of the copyright owner's five exclusive rights. *See Ford Motor Co. v. Summit Motor Prod., Inc.*, 930 F.2d 277, 291 (3d Cir. 1991).

In Count 1 of the complaint, Steeplechase alleges that Spiralverse has infringed its copyrights in the Piano Book by creating unauthorized derivative works. (Compl. ¶¶59-60.) To be clear, Steeplechase does not here assert a claim that the mere resale of an unaltered physical book would have violated its copyright. Its claim is based on a derivative-work theory.

As to Count 1, then, the sole issue before the Court is whether Spiralverse's version of the Piano Book is a "derivative work" within the meaning of the Copyright Act. A "derivative work" is defined under the Copyright Act as

> a work based upon one or more preexisting works, such as a translation, musical arrangement, dramatization, fictionalization, motion picture version, sound recording, art reproduction, abridgement, condensation, or any other form in which a work may be recast, transformed, or adapted. A work consisting of editorial revisions, annotations, elaborations, or other modifications which, as a whole, represent an original work of authorship, is a "derivative work."

17 U.S.C. § 101.

The central dispute between the parties is whether a "derivative work" must possess some minimum level of creativity such that it could be considered an original work of authorship. Steeplechase posits that a derivative work that makes creative contributions to an existing work may constitute an original work of authorship (and thereby qualify for copyright protection on its own), but that is a separate question from whether the work is derivative of a preexisting work. (St. Mot. 17.) Spiralverse, by contrast, argues that the two analyses are the same. Because the spiral binding installed by Spiralverse is "a

5

purely utilitarian element" that makes no creative contribution to the Piano Book, Spiralverse maintains that it has not created a "derivative work." (St. Mot. 4-5.)

Steeplechase relies on the plain language of the Copyright Act to support its interpretation. According to Steeplechase, the first sentence of the definition set forth above explains that a "derivative work" is a "work based upon one or more preexisting works . . .", while the second sentence clarifies that a work may constitute an "original work of authorship" while still falling under the definition of a "derivative work." (St. Mot. 17.) In this way, the Act distinguishes between "works" and "works of authorship;" "'works' refers broadly to anything created by humans and includes non-copyrightable works," while "'works of authorship' is that subset of 'works,' which are copyrightable subject matter." (St. Resp. 8.) Ergo, says Steeplechase, a "work" is a "derivative work" *even if* it constitutes "an original work of authorship," not *only if* it constitutes "an original work of authorship." (St. Mot. 18.)

To bolster this argument, Steeplechase points to canons of statutory interpretation. Under the canon of consistent usage and meaningful variation, a court must presume that a word or phrase bears the same meaning throughout the statute, and conversely that a material variation in terms suggests a variation in meaning. *See Gustafson v. Alloyd Co.,* 513 U.S. 561, 568 (1995). Under the canon of non-surplusage, the words in a statute should not be interpreted in such a way that they add nothing, or are meaningless. *See United States v. Butler,* 297 U.S. 1, 65 (1936). Both of these canons support the conclusion that a "work" and a "work of authorship" are not one and the same.

Canons of construction are rules of thumb, however, not rules of law. *See United States v. United Mine Workers of Am.,* 330 U.S. 258, 314 (1947) (Frankfurter, J., concurring) ("[A] canon, like other generalities about statutory construction, is not a rule of law."). Moreover, there appear to be authorities supporting Steeplechase's interpretation as well as authorities on the other

side. *See Lee v. A.R.T. Co.*, 125 F.3d 580, 582 (7th Cir. 1997) (noting that both views have the support of cases and respected commentators). The Third Circuit has yet to weigh in.

The Seventh Circuit, when presented with the same statutory interpretation argument offered by Steeplechase, found it unnecessary to decide the issue. *Id.* Instead, the Court focused solely on the first sentence of the Copyright Act's definition of "derivative work" and asked whether the underlying work had been "recast," "transformed," or "adapted" to make the allegedly infringing work. *Id.* Originality aside, the Court concluded that no "recasting," "transforming," or "adapting," had occurred, and therefore no derivative work had been created. *Id.*

The facts of *Lee* are analogous to those here. There, an artist owned the copyright for her works of art, which took the form of notecards and lithographs. *Id.* at 580. The defendant purchased some of these works, mounted them on ceramic tiles, and resold them. *Id.* The artist sued on the ground that the tiles were unauthorized "derivative works." *Id.*

Writing for the Court in *Lee*, Judge Easterbrook observed that two Ninth Circuit cases had held that the gluing of works of art onto ceramic tiles creates a "derivative work" under the Copyright Act. *Id. See Muñoz v. Albuquerque A.R.T. Co.,* 38 F.3d 1218 (9th Cir. 1994) (affirming without published opinion 829 F. Supp. 309 (D. Alaska 1993)); *Mirage Editions, Inc. v. Albuquerque A.R.T. Co.,* 856 F.2d 1341 (9th Cir. 1988). *Lee* declined to follow those decisions. Judge Easterbrook explained:

> Lee's works were not "recast" or "adapted". "Transformed" comes closer . . . . Yet the copyrighted note cards and lithographs were not "transformed" in the slightest. The art was bonded to a slab of ceramic, but it was not changed in the process. It still depicts exactly what it depicted when it left Lee's studio. See William F. Patry, *Copyright Law and Practice* 823–24 (1994) (disapproving Mirage Editions on this ground). If mounting works a "transformation," then changing a painting's frame or a photograph's mat equally produces a derivative work. Indeed, if Lee is right about the meaning of the definition's first sentence,

7

then any alteration of a work, however slight, requires the author's permission. We asked at oral argument what would happen if a purchaser jotted a note on one of the note cards, or used it as a coaster for a drink, or cut it in half, or if a collector applied his seal (as is common in Japan); Lee's counsel replied that such changes prepare derivative works, but that as a practical matter artists would not file suit. A definition of derivative work that makes criminals out of art collectors and tourists is jarring despite Lee's gracious offer not to commence civil litigation.

*Lee*, 125 F.3d at 582.

I find Judge Easterbrook's reasoning both persuasive and applicable here. Although Spiralverse undoubtedly altered the Piano Books it purchased by installing spiral bindings, it did not "recast," "adapt," or "transform" the underlying work. To "recast" something is to remodel or refashion it so as to present it in a new way. *See Merriam-Webster.com Dictionary*, "Recast," Merriam-Webster, https://www.merriam-webster.com/dictionary/recast. Accessed 24 Jan. 2023. Spiralverse did not make any changes to the content of the Piano Books so as to present the information in a different manner. To "adapt" something is to modify it for a new use. *See Merriam-Webster.com Dictionary*, "Adapt," Merriam-Webster, https://www.merriam-webster.com/dictionary/adapt. Accessed 24 Jan. 2023. The spiralbound books Spiralverse created and sold had the same use as the paperback versions manufactured by Steeplechase. Finally, "transform" implies a major change in form, nature, or function. *See Merriam-Webster.com Dictionary*, "Transform", Merriam-Webster, https://www.merriam-webster.com/dictionary/transform. Accessed 24 Jan. 2023. Certainly Spiralverse did not work a major change to the Piano Books by modifying the binding. The only difference between a spiralbound and paperback version of the same book is the ease with which pages can be turned and material displayed.[3]

I conclude that Spiralverse, in rebinding the books, did not create a

---

[3]    Thus a spiralbound version may lie more flat on the piano's music stand and may facilitate page turning in performance.

"derivative work" within the meaning of the Copyright Act. *See Lantern Press, Inc. v. Am. Publishers Co.*, 419 F. Supp. 1267, 1269 (E.D.N.Y. 1976) (finding no copyright infringement where the defendant bought paperback books and installed hard covers without changing a line of text). Spiralverse's version of the Piano Book is not "based upon" Steeplechase's original; it is the same book. It contains the exact same content, displayed in the same manner and in the same order. There are no additions or deletions. I will therefore grant summary judgment to Spiralverse on Count 1 and dismiss the copyright infringement claim.

### B. Trademark claims

"[T]he purpose of trademark law is . . . to guarantee that every item sold under a trademark is the genuine trademarked product, and not a substitute." *Beltronics USA, Inc. v. Midwest Inventory Distribution, LLC*, 562 F.3d 1067, 1072 (10th Cir. 2009) (quoting *United States v. Giles*, 213 F.3d 1247, 1252 (10th Cir. 2000)). Congress enacted the primary federal trademark statute, the Lanham Act, to prevent "the deceptive and misleading use of marks in . . . commerce." 15 U.S.C. § 1127.

In addition to creating a cause of action for trademark infringement, "[t]he Lanham Act creates a cause of action for unfair competition through misleading advertising or labeling." *POM Wonderful LLC v. Coca-Cola Co.*, 573 U.S. 102, 107 (2014). Pursuant to 15 U.S.C. § 1125(a), the use of "any false designation of origin," which "is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin" is actionable "by any person who believes that he or she is likely to be damaged by such act." The same goes for any "false or misleading representation of fact . . . in commercial advertising or promotion" which "misrepresents the nature, characteristics, qualities or geographic origin of his or her or another person's goods." *Id.* Such claims are referred to as "false designation of origin" and "false advertising."

In Count 2 of the complaint, Steeplechase asserts an unfair competition

claim under the Lanham Act, alleging both false advertising and false designation of origin. According to Steeplechase, Spiralverse falsely advertised its version of the Piano Book on Amazon as "new" and created the false impression that Steeplechase authorized its installation of spiral bindings. (Compl. ¶¶67-77.) I will address each claim in turn.

### i.   False advertising

"To establish a false advertising claim under the Lanham Act, a plaintiff must prove: 1) that the defendant has made false or misleading statements as to his own product [or another's]; 2) that there is actual deception or at least a tendency to deceive a substantial portion of the intended audience; 3) that the deception is material in that it is likely to influence purchasing decisions; 4) that the advertised goods traveled in interstate commerce; and 5) that there is a likelihood of injury to the plaintiff in terms of declining sales, loss of good will, etc." *Pernod Ricard USA, LLC v. Bacardi U.S.A., Inc.,* 653 F.3d 241, 248 (3d Cir. 2011) (citing *Warner–Lambert v. Breathasure*, 204 F.3d 87, 91–92 (3d Cir. 2000)). "As to the second element, actual deception or a tendency to deceive is presumed if a plaintiff proves that an advertisement is unambiguous and literally false." *Id.* (citing *Novartis Consumer Health, Inc. v. Johnson & Johnson–Merck Consumer Pharm. Co.,* 290 F.3d 578, 586) (3d Cir. 2002). "If the message conveyed by an advertisement is literally true or ambiguous, however, the plaintiff must prove actual deception or a tendency to deceive, and it may do so with a properly conducted consumer survey." *Pernod, supra* (citing *Novartis, supra* at 588-90).

Steeplechase argues that it is entitled to summary judgment on its false advertising claim because Spiralverse's Amazon listing for its version of the Piano Books was literally false. (St. Mot. 8-10.) The listing stated that the condition of the books was "new," but in fact Spiralverse had modified the bindings, which left glue residue between the cover and the first page and obscured some of the printed matter, and Spiralverse placed sticker labels on some of the books. (Stip. Facts ¶10.) According to the Amazon condition

10

guidelines for books, "new" means "[a] brand-new copy with cover and original protective wrapping intact. Books with markings of any kind on the cover or pages, books marked as 'Bargain' or 'Remainder,' or with any other labels attached may not be listed as New condition." (Amazon Guid. 2.) Steeplechase maintains that under either the Amazon condition guidelines or the ordinary English definition of the word, the books sold by Spiralverse were not "new."

Spiralverse argues that genuine issues of material fact exist as to the false advertising claim and therefore summary judgment should be denied. (Sp. Opp. 5-7.)[4] According to Spiralverse, "[t]he Amazon guidelines do not contemplate installation of a spiral binding." (Sp. Opp. 6.) The only condition options aside from "new" are "used – like new;" "used – very good;" "used – good;" "used – acceptable;" and "unacceptable." (Amazon Guid. 2.) Spiralverse would interpret "new" to mean "not used." The books had not previously been used to perform or learn music, says Spiralverse, had no signs of wear, and therefore could permissibly be described as "new." (Sp. Opp. 6.) The glue residue on the books is *de minimis*, Spiralverse maintains, and the only print content obscured by the spiral bindings consisted of parts of the double vertical bar and the ends of musical staves. (*Id.* 7.). A more appropriate way to describe the books would be "modified," but that is not an option on Amazon; in selecting "new" from the list of options, a seller does not unambiguously make any representation either way as to whether the product has been modified.

The Third Circuit has emphasized that "only an *unambiguous* message can be literally false." *Novartis*, 290 F.3d at 587 (emphasis in original). This is because if a message is ambiguous, it cannot be said that "the consumer will *unavoidably* receive a false message from the product's name or advertising." *Id.* (Emphasis added.) Consequently, "[i]n analyzing whether an advertisement or product name is literally false, a court must determine, first, the

---

[4]     It does not appear from the briefing that Spiralverse seeks summary judgment on this particular claim.

unambiguous claims made by the advertisement or product name, and second, whether those claims are false. *Id.* (citing *Clorox Co. v. Procter & Gamble Commercial Co.*, 228 F.3d 24, 34 (1st Cir. 2000)).

Another Court in this Circuit found that an advertisement was literally false because it "unambiguously and explicitly" told the public that the product at issue contained a component called Helioplex® when in reality it did not. *Schering-Plough Healthcare Prod., Inc. v. Neutrogena Corp.,* No. CIV.09-642-SLR, 2010 WL 1992247, at *3 (D. Del. May 18, 2010). The Court concluded that the plaintiff did not need to provide evidence of consumer confusion because "such confusion is presumed." *Id.*

Based on the current record, I cannot conclude that Spiralverse's Amazon listing was unambiguously false. It appears that Amazon forces sellers to choose between characterizing their books as "new" or various degrees of "used," but neither description fits a product that has not been used by a consumer, but has been altered by a third-party seller.[5] One could certainly argue that "new" means "not altered in any manner after manufacturing," but one could also argue that "new" simply means "not used." The Amazon condition guidelines are relevant, at least to the extent that consumers are aware of them, but there is no evidence either way as to whether they are. And even if a judge's experience shopping on Amazon.com is suggestive of a conclusion, it is not so universal as to permit the exercise of judicial notice.

The Amazon guidelines suggest that a book's listed condition is not confined to previous use, but is also intended to convey the presence and extent of cosmetic defects. It is highly counterintuitive, for example, that a product, because it has not been used by a consumer, could be listed as "new" despite being severely damaged. Still, I cannot at present say that Spiralverse's

---

[5]     If Amazon did not require a seller to choose between a fixed set of options and instead allowed the seller to describe the condition of a book using words of the seller's choosing, I would be more inclined to find that Spiralverse's listing was unambiguous and literally false. The record does not conclusively establish whether a seller has any flexibility in this regard.

listing was *unambiguously* false. While the record contains some images of the Steeplechase and Spiralverse versions of the book, the extent of the glue residue and obscured print on the latter is unclear, and Spiralverse disputes whether either is even noticeable. To say that consumers would be unavoidably misled by a "new" listing would be premature.

Of course, Steeplechase may alternatively attempt to establish that Spiralverse's Amazon ad deceived the buying public, even if it was not "literally false." *Johnson & Johnson-Merck Consumer Pharms. Co. v. Rhone-Poulenc Rorer Pharms., Inc.,* 19 F.3d 125, 129–30 (3d Cir. 1994) (where a plaintiff is unable to show literal falsity, a false advertising claim may be established by proving that consumers were actually misled). Indeed, Steeplechase argues that multiple consumer reviews on Amazon demonstrate that purchasers of the Spiralverse book did not receive what they expected. (St. Mot. 11-12.) Steeplechase attached these reviews as exhibits to its summary judgment motion.

Spiralverse points out, however, that it has not had an opportunity to conduct discovery on the veracity of the cited reviews or to determine whether other reviews exist that would suggest a contrary conclusion. (St. Opp. 12) Nor has any party pointed to consumer surveys or the like. Given that the case is still in the pre-discovery phase, I will deny summary judgment to Steeplechase on the false advertising claim at this time.

### ii. False designation of origin

To prove a false designation of origin claim under the Lanham Act, a plaintiff must show that (1) the plaintiff has a valid and legally protectable mark; (2) it owns the mark; and (3) the defendant's use of the mark to identify goods or services causes a likelihood of confusion. *A & H Sportswear, Inc. v. Victoria's Secret Stores, Inc.,* 237 F.3d 198, 210 (3d Cir. 2000). The parties agree that the first two elements of this test are met with respect to the Steeplechase Mark. (Stip. Facts ¶2.)

The Third Circuit has set forth the factors which may indicate a likelihood of confusion:

(1) the degree of similarity between the owner's mark and the alleged infringing mark;

(2) the strength of the owner's mark;

(3) the price of the goods and other factors indicative of the care and attention expected of consumers when making a purchase;

(4) the length of time the defendant has used the mark without evidence of actual confusion arising;

(5) the intent of the defendant in adopting the mark;

(6) the evidence of actual confusion;

(7) whether the goods, though not competing, are marketed through the same channels of trade and advertised through the same media;

(8) the extent to which the targets of the parties' sales efforts are the same;

(9) the relationship of the goods in the minds of consumers because of similarity of functions; and

(10) other factors suggesting the consuming public might expect the prior owner to manufacture a product in the defendant's market or that he is likely to expand into that market.

*Sabinsa Corp. v. Creative Compounds, LLC*, 609 F.3d 175, 182 (3d Cir. 2010). (These factors had their classic formulation in *Interpace Corp. v. Lapp, Inc.*, 721 F.2d 460, 463 (3d Cir. 1983), and are commonly known as the "*Lapp* factors.") The single most important *Lapp* factor is mark similarity. *Sabinsa, supra,* at 183 (citing *A & H Sportswear*, 237 F.3d at 216).

"Marks are confusingly similar 'if ordinary consumers would likely conclude that [the two products] share a common source, affiliation, connection or sponsorship.'" *Sabinsa,* 609 F.3d at 183 (quoting *Fisons Horticulture, Inc. v. Vigoro Indus., Inc.,* 30 F.3d 466, 477 (3d Cir. 1994)). Where an infringer uses the exact trademark of the plaintiff, "there is a great likelihood of confusion." *S & R Corp. v. Jiffy Lube Int'l, Inc.*, 968 F.2d 371, 375 (3d Cir. 1992) (citing *Opticians Ass'n of America v. Independent Opticians of*

14

*America,* 920 F.2d 187, 195 (3d Cir. 1990)).

Here, it is undisputed that the spiralbound Piano Books sold by Spiralverse bear the Steeplechase Mark. (Stip. Facts ¶6.) Yet Spiralverse argues that the label it has affixed to the cover of its resold books prevents consumer confusion; the label notifies consumers that "[t]he original binding was removed and replaced with a spiral binding by Spiralverse.com." (*Id.* ¶11; Sp. Mot. 5-7.) Steeplechase responds that the label in fact does the opposite. It does not alleviate confusion but instead creates the impression that Steeplechase authorized the rebinding. (St. Mot. 15.) That confusion is only exacerbated by the fact that Spiralverse lists its books as "new" on Amazon, implying that Spiralverse, in association with Steeplechase, is the originator of the product.[6]

The current record does not support a grant of summary judgment to either party at this time. Likelihood of confusion is a factual question. While the case law has meandered, it appears that a determination risks reversal unless it is supported by specific findings. *See Sabinsa, supra.* There is insufficient evidence in the record to demonstrate that consumers likely understood that the rebinding was done without the permission of Steeplechase, or that consumers were likely confused about who was responsible. The record does not even contain images of covers of Spiralverse books with the label, so the Court cannot determine for itself how conspicuous the label is. There is also disagreement between the parties as to whether the label was affixed to all of the spiralbound Piano Books sold by Spiralverse, or whether it was affixed to only some. Accordingly, the motions for summary judgment are both denied as to the false designation of origin claim. *See Kabler v. United Food & Com. Workers Union, Loc. 1776 Keystone State*, No. 1:19-CV-

---

[6]     Steeplechase also claims that Spiralverse's Amazon webpage prominently features Steeplechase's branding, which adds to the confusion. (St. Mot. 14.) Steeplechase attached a purported screenshot of the webpage as an exhibit to its summary judgment motion, but it is not clear from the screenshot that Spiralverse is responsible for the content. (DE 22-7, Declaration of David Leit, Exhibit 5.) The page lists the seller as "Your Name Books," but there is no reference to Spiralverse.

395, 2020 WL 1558357, at *3 (M.D. Pa. Mar. 31, 2020) ("A pre-discovery motion for summary judgment is only appropriate for pure questions of law or incontrovertible questions of fact that must be shown through documentary evidence, not for having claims dismissed when the plaintiff lacks evidence before discovery has taken place.")

### iii.    "First sale" defense

The "first sale" doctrine is an affirmative defense to trademark infringement claims, and Spiralverse argues that it applies in this case. (Opp. 7.) Under that doctrine, "a trademark owner's authorized initial sale of its product into the stream of commerce extinguishes the trademark owner's rights to maintain control over who buys, sells, and uses the product in its authorized form." *Iberia Foods Corp. v. Romeo*, 150 F.3d 29, 301 n.4 (3d Cir. 1998). "The rationale for the rule 'is that trademark law is designed to prevent sellers from confusing or deceiving consumers about the origin or make of a product, which confusion ordinarily does not exist when a genuine article bearing a true mark is sold.'" *Brilliance Audio, Inc. v. Haights Cross Communications, Inc.*, 474 F.3d 365, 369 (6th Cir. 2007) (quoting *NEC Electronics v. CAL Circuit Abco*, 810 F.2d 1506, 1509 (9th Cir. 1987)). Thus, the critical question is whether a product resold by an alleged infringer is "genuine." If so, no infringement has occurred. *See, e.g. Weil Ceramics & Glass, Inc. v. Dash,* 878 F.2d 659, 671 (3d Cir. 1989) (quoting *NEC Elecs., supra*) ("Trademark law generally does not reach the sale of *genuine* goods bearing a true mark even though such sale is without the owner's consent.") (emphasis in original); *Iberia Foods, supra,* at 302 ("[A] trademark owner attempting to use § 32 to prevent an infringement must establish that the products sold by the alleged infringer are not 'genuine.'")

A product is "genuine" if there are no "material differences" between products sold by the trademark owner and those sold by the alleged infringer. *Iberia Foods*, 150 F.3d at 302-303. "When the products sold by the alleged infringer and the trademark owner contain identical marks but are materially

different, consumers are likely to be confused about the quality and nature of the trademarked goods." *Id.* at 303. On the other hand, if the difference between the products is so minimal that "consumers who purchase the alleged infringer's goods get precisely what they believed that they were purchasing, consumers' perceptions of the trademarked goods are not likely to be affected by the alleged infringer's sales." *Id.* (Citation omitted.) The "material differences" test is thus a means to "determine whether the allegedly infringing products are likely to injure the goodwill developed by the trademark owner in the trademark goods." *Id.*

Spiralverse does not appear to dispute that there are "material differences" between its spiralbound books and the paperback originals sold by Steeplechase. (Sp. Opp. 7.) Rather, Spiralverse contends that the "first sale" doctrine shields a reseller from liability where the reseller clearly communicates to consumers any material alterations that the seller has made to the product. (*Id.*) Although Spiralverse did not cite any cases in support of this argument, it has intuitive appeal. If a consumer understands that the reseller is responsible for any material differences between the resold and genuine product, then the owner's goodwill in the trademarked product is unlikely to be damaged.

However, as discussed above, it is not at all clear that Spiralverse's label alleviates all confusion about which entity is responsible for the rebinding, particularly in light of the fact that Spiralverse advertises its version of the Piano Book as "new." If consumers understand that Spiralverse modified the binding but believe that it did so with the permission of or in association with Steeplechase, the goodwill of the Steeplechase Mark could still be affected. Accordingly, Spiralverse has not established that the "first sale" doctrine applies to its sale of the spiralbound Piano Books.

## V.     Conclusion

Spiralverse's motion for summary judgment (DE 22) is **GRANTED IN PART** and **DENIED IN PART**. Specifically, the motion is granted as to the copyright infringement claim asserted in Count 1 and denied as to the trademark claims asserted in Count 2. Steeplechase's motion for summary judgment (DE 24) is **DENIED**. An appropriate Order will issue.

Dated: January 26, 2023

/s/ Kevin McNulty

_____

**KEVIN MCNULTY**
**United States District Judge**